

**FILED**
**Aug 11, 2023**
**02:00 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Tamatha Baker | ) Docket No. 2022-07-0502 |
| | ) |
| v. | ) State File No. 33449-2022 |
| | ) |
| ViacomCBS, Inc., et. al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Allen Phillips, Judge | ) |

---

### Affirmed and Remanded

---

In this interlocutory appeal, the employer appeals the trial court's order for medical benefits, including a total knee replacement, in light of evidence indicating the employee had a pre-existing knee condition. The employee suffered a fall at work, resulting in complaints of pain in the left knee. Following conservative treatment, the employee's authorized physician recommended a total knee replacement. The employer declined to authorize the procedure based on questionnaire responses from the treating physician. After the denial, the employer received medical records from two providers indicating the employee had a history of left knee complaints within months of the work accident, as well as a prior surgery to the left knee in 2012. At the expedited hearing, the employee presented testimony from the authorized physician stating her work injury was the primary cause of her need for surgery. The trial court found the employee was likely to prevail at a hearing on the merits and ordered the employer to provide medical treatment, including the recommended surgery, and temporary total disability benefits. The employer has appealed. Upon careful consideration of the record, we affirm the trial court's order and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

J. Allen Callison, Brentwood, Tennessee, for the employer-appellant, ViacomCBS, Inc.

Rhoberta R. Orsland, Memphis, Tennessee, for the appellee, Tamatha Baker

**Factual and Procedural Background**

Tamatha Baker ("Employee") was working for ViacomCBS, Inc. ("Employer"), on May 2, 2022, when a co-worker's forklift maneuver caused her left leg to be snagged and pulled her down to the floor. Employee was initially seen at Physician's Quality Care, where she was diagnosed with a sprain of the left knee. Ultimately, that provider referred her to an orthopedic specialist, and Employer provided a panel. Employee selected Dr. Cameron Knight, whom she saw on May 27, 2022. At the initial appointment with Dr. Knight, Employee completed intake forms indicating a prior surgery on her right knee. She did not disclose any prior medical history related to her left knee, which she indicated was in constant pain. Dr. Knight diagnosed Employee with "severe arthritis," stating the injury "stressed her left knee." He performed a cortisone injection at the appointment, prescribed physical therapy, and assigned light duty restrictions, which Employer was able to accommodate.

Employee returned to Dr. Knight the following month and reported that the injection only helped for a short period of time and that her pain was still constant. Dr. Knight changed her prescribed medication, recommended continued physical therapy, and discussed the possibility of an arthroscopy. At the following appointment in July 2022, Employee asserted she was approved for treatment of both the right and left knee due to frequent falls on the right knee from instability in her left knee. At that point, based on Dr. Knight's opinion that she had "failed conservative care," he recommended a left total knee arthroplasty.

Employer sent Dr. Knight a questionnaire dated September 12, 2022, regarding the referral for surgery.[1] Dr. Knight responded in the affirmative to the following questions on September 16, 2022:

> Do you agree that the primary diagnosis that supports the need for the total knee replacement is end-stage osteoarthritis?
>
> Do you agree that the end-stage osteoarthritis was not primarily caused by the at-work accident on [May 2, 2022]?

Dr. Knight added, "[t]he patient had a preexisting osteoarthritic knee that had previously not been a source of functionally limiting pain until her work injury." Meanwhile, Employee returned to Dr. Knight on September 21, 2022, with complaints of continuing pain. She had been working for Employer with restrictions, and Dr. Knight discussed taking her out of work to alleviate her pain due to the delay in getting the surgery approved.

---

[1] The copy of the questionnaire contained in the record as part of Collective Exhibit 2 is illegible. Employer's attorney read the responses into the record at the expedited hearing, stating, "our copy of the questionnaire . . . is not ideal." Employee did not object to the admissibility of the questionnaire or the reading of Dr. Knight's responses into the record.

In October 2022, Employer denied the recommended knee replacement. Thereafter, Employee's counsel sent a questionnaire to Dr. Knight that asked whether the need for the total knee replacement was hastened by the work accident and whether the pre-existing condition was exacerbated by the work accident. Finally, the questionnaire asked if the need for the left knee replacement arose primarily from the work accident. Employee also filed a petition for benefit determination. Dr. Knight responded to the questionnaire in December 2022 and answered all three inquiries in the affirmative. Employer then scheduled an employer's medical examination with Dr. Jeffrey Dlabach in January 2023.

Dr. Dlabach agreed with Dr. Knight that Employee had end-stage osteoarthritis and needed a total knee replacement. However, he opined that the need for the knee replacement was primarily due to the pre-existing arthritic condition, although the work injury "led to the aggravation of some of the symptomology." At the time of his examination, Dr. Dlabach had copies of Employee's medical records, including records from a left knee medial meniscectomy and synovectomy performed by Dr. Barry Hennessey in 2012. There is no indication in the medical records Employee ever discussed this prior treatment with Dr. Knight.

The parties deposed Dr. Knight prior to the expedited hearing. Although he admitted there was no indication in his records that Employee informed him of a prior left knee surgery, it does appear he became aware of the prior surgery at some point during the course of his treatment based on the following exchange that occurred between Employer's counsel and Dr. Knight:

Counsel:     Doctor, were you surprised to learn that [Employee] had undergone arthroscopic surgery in 2012 for her left knee?

Dr. Knight:  Surprised?

Counsel:     Yes.

Dr. Knight:  Not surprised, no.

When asked, Dr. Knight stated that Employee's prior knee surgery, age, and her body mass index were "predictive" that she was "likely . . . on the path to [a knee replacement]." He went on to state that he "would have expected her to be symptomatic in some form or fashion leading up to an injury" despite Employee's denial of any subjective complaints prior to the work injury. On cross examination by Employee's counsel, Dr. Knight stated that he still believed, to a reasonable degree of medical certainty, that the need for the recommended surgery was hastened and primarily caused by the work injury, and that the recommended treatment was reasonable and necessary. On redirect, Dr. Knight explained further:

3

This injury was the index for causing a pain level or dysfunction level that has led to the need to proceed with a knee replacement, irrespective of not being able to show that objectively on an x-ray.

When Employer's counsel asked Dr. Knight to describe circumstances where the work accident would *not* be the primary cause of the need for a total knee replacement, he responded, "[i]f there is a known history of dysfunction of the knee and pain and dysfunction leading up prior to that [work accident]." When asked to clarify the definition of "dysfunction of the knee," Dr. Knight stated, "I mean pain, activity, limitations, motion restrictions attributable to their underlying knee arthritis." Dr. Knight further stated that the prior surgery was "evidence of the disease process." He then explained:

But when someone's telling me . . . they were not having problems with the knee from a functional standpoint enough to cause an inability to perform their job or [activities of daily living] or just day-to-day living until . . . this injury and the failure to have the pain get better despite conservative care to address such pain, then to me that injury exacerbated the underlying process enough to fail conservative care, after which the only other decision is to proceed with knee replacement.

At the May 18, 2023 expedited hearing, Employee sought an order compelling the recommended surgery, ongoing temporary total disability beginning September 21, 2022, a walker prescribed by Dr. Knight, and reimbursement for an unauthorized prescription.[2] By the time of the expedited hearing, Employer had obtained other medical records from Dr. Misty Allen at Family Care Walk In Clinic ("Family Care"). The Family Care record of a December 2021 visit, which was about six weeks before she started working for Employer's facility, states in "History of Present Illness" that Employee has "bil[ateral] knee swelling" and "pain h/o trauma in both knees has had [surgery] in the past." Dr. Allen prescribed Celebrex for "unspecified knee pain." Employee returned on January 5, 2022, with complaints of insomnia. At that visit, she informed the provider that the medication she was given at the last visit had not helped her knee pain, and Dr. Allen changed her medication to diclofenac. When Employee returned on February 8, 2022, she complained that her knee pain started after she had "[been] up on her feet for two hours [at work]." Dr. Allen made a referral to the West Tennessee Bone and Joint Clinic at that appointment. Employer contended that it discovered these records after reviewing pharmacy records and that Employee failed to disclose this treatment in either her discovery responses or her deposition.[3] Employer asserted that this omission of relevant medical history from her

---

[2] Of note, Dr. Knight's medical records state that he considered taking Employee off work on September 21, 2022; however, in his deposition, he stated that she was not taken completely out of work until February 2, 2023. Neither party raised the date Employee was taken out of work as an issue at the hearing or on appeal.

[3] Neither the written discovery nor any portion of Employee's deposition is part of the technical record.

recorded statement, discovery responses, and deposition, as well as her failure to inform her treating physician, are indicia of a lack of credibility. Employer further argued Employee's failure to disclose any issues with her knees on her initial pre-employment medical questionnaire calls into question her honesty.[4]

In response to Employer's argument, Employee testified her initial appointment with Dr. Allen was because she believed she had COVID-19. She further testified she did not provide the name of the clinic in her interrogatory responses because she believed the facility was part of The Jackson Clinic, a group she had identified in those same responses. She testified that she did not recall a referral to West Tennessee Bone and Joint and that she did not schedule an appointment with them. Regarding her private life, Employee testified that, prior to the work injury, she was able to work without any problems, as well as walk her dog, spend time with her grandchildren, and go hiking, whereas, after the work injury, she needs assistance with activities of daily living, including going to the bathroom and getting in and out of the shower.

In assessing the expert medical proof, the trial court found that Dr. Knight's opinion regarding causation was entitled to a presumption of correctness pursuant to Tennessee Code Annotated section 50-6-102(12)(E) because he was the authorized treating physician chosen from a panel pursuant to Tennessee Code Annotated section 50-6-204(a)(3). Based on its review of that evidence, the court determined that the need for surgery was primarily related to the work injury. The trial court further found Employee to be credible, stating that "[h]er omission of a decade old meniscectomy and visits to a general practitioner do not detract from the fact that she was not disabled until the accident" and that "no connection exists between the preexisting conditions and the need for surgery." Accordingly, the court awarded the requested medical benefits and ongoing temporary disability benefits beginning September 21, 2022, until Employee reaches maximum medical improvement or is able to return to work. Employer has appealed.[5]

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn.,*

---

[4] Employee had been working directly for Employer for about a month after being placed there through a temporary staffing agency in February 2022. Employer's counsel stated at the hearing it was not currently pursuing a willful misrepresentation defense but was instead using the form for impeachment purposes.

[5] After filing the notice of appeal, Employer filed a "Motion for Remand" based on its purported discovery of additional evidence. We denied that motion as the order from the trial court is interlocutory in nature and, as such, is subject to amendment, revision, or reversal at any time. *See* Tenn. R. Civ. P. 54.02.

*Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

## Analysis

The appellant raises one issue on appeal, which we restate as follows: whether Employee met her burden of proof regarding the primary cause of her need for a total knee replacement given the evidence indicating symptomology prior to her employment not considered by the authorized treating physician. Employer argues that because Employee failed to disclose any of her prior medical treatment to the left knee to her authorized physician, his causation opinion has been called into question and is not a sufficient basis to award benefits. Specifically, Employer argues the trial court is "to consider the evidence and make an informed decision on what it *anticipates* the evidence will be at a full compensation hearing." For the reasons explained below, we are unpersuaded.

"[A]n employee need not prove each and every element of his or her claim by a preponderance of the evidence at an expedited hearing to be entitled to [benefits] but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At this stage in the litigation, Employee has presented both questionnaire responses and deposition testimony from the authorized treating physician stating that, although Employee does have pre-existing end-stage arthritis, her current need for a total knee replacement is due primarily to the work injury. This opinion carries a presumption of correctness that can be rebutted by the preponderance of the evidence. *See* Tenn. Code. Ann. § 50-6-102(12)(E).

In rebuttal, Employer points to Dr. Knight's statements that "a known history of dysfunction in the knee" would indicate the work injury may not be the primary cause of the need for the knee replacement; however, Dr. Knight clarified that his definition of the term "dysfunction of the knee" is an "inability to perform their job or [activities of daily living] or just day-to-day living." Here, the unrefuted testimony at the expedited hearing was that Employee was able to work without restrictions and perform activities of daily living prior to the work accident. After the work accident, she required work restrictions and testified to the difficulties she experienced performing activities of daily living.

6

Employer relies on the 2012 records of a meniscectomy, Dr. Dlabach's written report, and primary care records evidencing complaints of bilateral knee pain from December 2021 to February 2022 in support of its argument that Employee's pre-existing condition was proof of prior dysfunction of the knee. In Employer's view, this evidence supports a finding that Employee is not likely to prove at trial that the work accident was the primary cause of her need for a left knee replacement. However, neither Dr. Knight nor Dr. Dlabach commented on whether the complaints of bilateral knee pain noted at three visits to a primary care physician would constitute "dysfunction in the knee." Moreover, Dr. Dlabach agreed that the work accident aggravated Employee's pre-existing knee condition. Without evidence of dysfunction to the knee prior to the work accident and medical proof supporting that the dysfunction is the primary cause for the need for surgery, Employer has offered insufficient evidence rebutting Dr. Knight's causation opinion. As we have previously stated, "parties and their lawyers cannot rely solely on their own medical interpretations of the evidence to successfully support their arguments." *Lurz v. International Paper Co.*, No. 2015-02-0462, 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *17 (Tenn. Workers' Comp. App. Bd. Feb. 14, 2018). Moreover, "[i]t is the responsibility of each party to secure whatever expert opinions such party may deem appropriate in support of its case." *Edwards v. The Job Shoppe U.S.A.*, No. 2016-05-0727, 2017 TN Wrk. Comp. App. Bd. LEXIS 26, at *13 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2017).

At this preliminary stage of the case, we look at whether the preponderance of the evidence presented supports the trial court's finding that Employee is likely to prevail at a hearing on the merits. *Mace v. Express Services*, No. 2015-06-0059, 2015 TN Wrk. Comp. App. Bd. LEXIS 19, at *12 (Tenn. Workers' Comp. App. Bd. June 19, 2015). Employee testified that prior to the work accident, she worked without restrictions forty hours a week and overtime as allowed. She further testified that she received bonuses every month that were partially based on attendance. This testimony was unrefuted by Employer. The trial court, observing her closely, determined Employee to be a credible witness regarding current complaints and physical restrictions. There was no proof presented that Employee was unable to perform her work or had difficulty in her personal life performing activities of daily living prior to the work accident. When a trial court has seen and heard the witnesses, considerable deference must be afforded its credibility findings. *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 372 (Tenn. 2008). Although we respectfully disagree with the trial court's conclusion that "*no* connection" exists between Employee's pre-existing arthritis and her need for the total knee replacement, her lay testimony combined with the opinion of her treating physician are sufficient to support the trial court's award of benefits at this interlocutory stage. In short, Dr. Knight's opinion that the work accident was the primary cause of the need for the total knee replacement was not sufficiently rebutted. As such, we do not find the evidence preponderates against the trial court's determination that Employee is likely to prevail at a hearing on the merits.

**Conclusion**

For the reasons stated above, we affirm the trial court's award of medical and temporary disability benefits and remand the case. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Tamatha Baker | ) | Docket No. 2022-07-0502 |
| | ) | |
| v. | ) | State File No. 33449-2022 |
| | ) | |
| ViacomCBS, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Allen Phillips, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 11th day of August, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| J. Allen Callison | | | | X | allen.callison@mgclaw.com cynthia.yeager@mgclaw.com |
| Rhoberta R. Orsland | | | | X | rorsland@forthepeople.com lwaite@forthepeople.com |
| Allen Phillips, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene
Acting Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-532-1564
Electronic Mail: WCAppeals.Clerk@tn.gov